ROBERT L. BLAND, Judge
The claim in this case is for materials furnished and labor performed in repairing a water tank at Concord College, a state institution, located' at Athens, in Mercer county, West Virginia. The West Virginia board of control, a state agenev, has control of the finances and business affairs of said Concord College and is vested by statute with title to all of its property.
.A. large tank, installed abou' the year 1922 upon a tower one hundred and fifty feet in height from the ground at an elevated location, supplies water and furnishes fire protection not only to the various college buildings but also to the inhabitants of the town of Athens. The water for this tank is obtained from wells drilled on the college premises. The bottom of the tank had deteriorated over a long period of use and was leaking. It was possible that electrical apparatus employed to precipitate the water into the tank also contributed to the condition of the bottom of the tank, or its deterioration could have *236 been caused by electrolysis. Temporary repairs had been made but no substantial results accomplished.
Claimant LeRoy Roberts, a contractor of Huntington, West Virginia, skilled in the line of his work, had successfully and very satisfactorily repaired a tank at Lakin, an institution for the treatment and care of the colored insane persons of the state and also done other good work at the instance of the board of control. With such knowledge, W. C. Cook, treasurer of the board of control, communicated in writing with J. F. Marsh, then president of the college and now president emeritus, having been succeeded as head of the institution by Virgil H. Stewart, suggesting claimant as one who might be interested in examining the tank in question for possible repairs during the college vacaton in August. President Marsh did take up the matter with claimant on the 27th of June, 1944. Claimant thereafter made a personal inspection of the condition of the water tank and recommended the requirement of a new bottom in order to give satisfaction. The bottom of the tank was leaking and practically worthless. Claimant was then directed by President Marsh to go ahead and order a new bottom for the tank, since an emergency existed. This was deemed expedient since they “would have no fire protection whatever for the building or the city.” Claimant immediately contacted the former fabricator of the tank and obtained a quotation as to the cost of a new bottom for the old tank. This quotation was $525.00 f. o. b. Neville Island, Pittsburgh, Pennsylvania. The new bottom was ordered by claimant and ready for shipment but the plant went on strike and the new tank bottom could not, for that reason, be gotten away .from the factory. When the bottom •finally reached the college in November, claimant removed the old section of the tank and put in the new bottom, but by this time it was the latter part of November and the weather was beginning to get cold. It was necessary to carry an emergency line on the tank in order to protect the buildings and to give the town of Athens, seat of the college, an immediate water supply. Also by this time there was a blizzard and the overflow line froze. Ice about four feet thick accumulated around *237 the stand pipe and over all of the equipment and a considerable section of the buildings. This blizzard lasted about four days during which time claimant and his force of workmen could not get back on the tank. Similar conditions of the weather continued from time to time, lasting two to three and one-half days and which necessarily retarded the progress of the work and added materially to its cost.
While the emergency line was frozen, the superintendent of buildings and grounds cut the water back into the tank thus causing considerable trouble and subjecting claimant to a further and greater outlay and expenditure of money.
The evidence discloses that claimant in order to place the new bottom in the tank actually paid the total sum of $3507.02. Of this amount he paid for the new bottom and other materials, necessarily used on the job $1141.89. He had a force of about six men from time to time and paid his labor $2365.13. He also purchased and used materials for which he made no charge against the state. During the time the work was in progress workmen employed on the job were furnished .meals at the college at a total of $165.50 for which amount he gives due credit. The evidence further reveals that claimant made no profits whatever on the transaction, but actually lost money.
The claimant had no formal contract in writing with the board of control, but it clearly appears that the work was authorized by at least one member of the board and by the president of the college. Claimant was assured that his proposal would be held and treated as a contract for the work and that the president of the college was arranging for the execution of a contract. The work was irregularly done insofar as a contract was concerned, but it was well done and entirely satisfactory to the president of the college and to the board of control. Two members of the board testified before this court to that effect and expressed the opinion that the work should be paid for. The state has received distinct value and benefit from the work. The claimant has acted in good faith and has never received any compensation for his labor or outlay of money. We believe that the claim is possessed of peculiar worth and *238 merit, and is an obligation which the state should discharge. We are impressed by the thought that the claim is in fact a distinct moral obligation of the state.
An award is, therefore, made in favor of claimant, LeRoy Roberts, for thirty-three hundred forty-one dollars and fifty-two cents ($3341.52).